**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**AHMAD ALQAM,**

        **Plaintiff,**

**v.**                                                                                          **Civil Action No. 3:06cv100**
                                                                                       **(Judge Bailey)**

**UNITED STATES OF AMERICA, FEDERAL**
**BUREAU OF PRISONS, ERIC VANCE,**
**C/O MASSEY, KEVIN WENDT, A/W HILL,**
**CAPT. ARNOLD, B. CREGAN, DR. D. WILLIAMS**
**AND LT. WHINNERY,**

        **Defendants.**

**OPINION/REPORT AND RECOMMENDATION**

**I.   Factual and Procedural History**

The *pro se* plaintiff initiated this case on September 22, 2006, by filing a civil rights complaint against the above-named defendants. On October 2, 2006, the plaintiff was granted permission to proceed as a pauper. The plaintiff paid his initial partial filing fee on January 8, 2007. Consequently, on November 1, 2007, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Thus, the Clerk was directed to issue summonses and forward copies of the complaint to the United States Marshal Service for service of process.

On February 27, 2008, the defendants filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. A Roseboro Notice issued the next day.

On April 28, 2008, the plaintiff filed a Motion and Declaration in Opposition to the Defendants' Motion for Summary Judgment. This case is before the undersigned for a Report and Recommendation on the defendants' Motion to Dismiss and the plaintiff's Motion in Opposition.

## II. The Pleadings

### A. The Complaint

In the complaint, the plaintiff asserts that on December 17, 2004, during the Jumu'ah Prayer, Lt. Page entered the Chapel and attempted to step over the neck of a Muslim inmate while the inmate was praying. Another Muslim inmate allegedly placed his hand on Lt. Page's chest to prevent the lieutenant from stepping over the inmate in prayer. The plaintiff asserts that an unknown Chaplain then interrupted the Friday Congregation to inform the Muslim inmates of a new BOP policy which prevented Muslim inmates from praying in congregational prayer anywhere except the Chapel.

The plaintiff asserts that according to the Muslim faith, congregational prayer is required five times a day. Therefore, several Muslim inmates, including the plaintiff, expressed their displeasure with the new policy, as well as, Lt. Page's attempt to step over a Muslim while in prayer.[1] Several days later, the plaintiff was escorted to the Special Housing Unit ("SHU"). The plaintiff was advised on January 31, 2005, that he was facing institutional charges for Threatening Another (Staff) and Encouraging a Group Demonstration. The plaintiff was later found guilty of encouraging a group demonstration.

During his time in the SHU, the plaintiff asserts that he was harassed by staff. For example, the plaintiff asserts that he was repeatedly called a terrorist and that staff kicked his door as they walked passed. Further, on February 1, 2005, as the plaintiff was being escorted from the SHU recreation area to his cell, defendant Vance allegedly bent the plaintiff's handcuffed wrists

---

[1] According to the plaintiff, the prophet Muhammad has said: "When anyone tries to pass in front of him (the prayer), he should be turned away, but if he refuses, he should be forcibly restrained from it, for he is a devil." Complaint at 4.

extremely high and hard because the plaintiff greeted another Muslim inmate with an Arabic greeting. The plaintiff also contends that defendant Vance verbally taunted him, and applied more pressure to the plaintiff's hand and arm, when the plaintiff complained of being hurt. As a result, the plaintiff asserts that he "heard his bones popping." The plaintiff also asserts that Warden Wendt, Asst. Warden Hill, Lt. Cregan, Capt. Arnold, Lt. Whinnery and Officer Sigman[2] were all present and refused to intervene. Moreover, the plaintiff asserts that as a result of the incident, he received an institutional charge for assaulting another and refusing to obey an order of staff. However, the plaintiff was later found not guilty of those charges.

On February 1, 2005, the plaintiff complained to medical staff of excruciating pain in his left hand, left arm and lower back. During his subsequent medical examination, the plaintiff alleges he told medical personnel that his injury was a result of his altercation with defendant Vance. The plaintiff asserts that the 500 mg of Tylenol prescribed for his pain was not adequate for the pain in his left wrist and lower back. The plaintiff's hand was also x-rayed and according to the plaintiff, the x-ray showed a "fracture dislocation of base of [his] 3rd/4th metacarpals with dorsal dislocation of metacarpal bases relative to carpals." Complaint at 6. The plaintiff was later diagnosed as having exacerbated on old wrist fracture and a temporary short cast was applied. That cast was later removed and a protective splint applied.

On March 15, 2005, the plaintiff asserts that a contract orthopedic surgeon agreed that the fracture dislocation was from an old injury and recommended an injection to control the pain. The plaintiff allegedly denied that an old injury was the cause of his current injuries, and further alleges that he did not refuse medical treatment. The plaintiff continued to complain of pain and requested

---

[2] Officer Sigman was not named as a defendant in this action.

corrective surgery, even after he was subsequently transferred to a Federal Transfer Center and then to USP-Big Sandy in Inez, Kentucky.

Next, the plaintiff asserts that his transfer to USP-Big Sandy was in retaliation for his being a "Palestinian/Muslim" and for filing grievances. Moreover, during his transfer, the plaintiff asserts that Officer Massey placed him in "blackbox handcuffs" and tightened the handcuffs until there was no space between the plaintiff's skin and the steel of the handcuffs. The plaintiff asserts that when he complained, defendant Massey made a derogatory comment and left the area without loosening the handcuffs. The plaintiff asserts that he also complained to numerous other employees at FCI-Gilmer, but none offered assistance. The plaintiff asserts that he then spent the next eight hours on a BOP transport bus, eventually losing all feeling in his hands and fingers. Although the plaintiff continued to ask that the handcuffs be loosened, those requests were allegedly ignored. The plaintiff asserts that it was not until he reached the airport, and a Deputy United States Marshal noticed the swelling and discoloration of his hands, that the cuffs were finally loosened. The plaintiff asserts that pictures were taken of his swollen hands, which by that time were about the size of a softball.

The plaintiff asserts that his administrative remedies have been exhausted. As relief, the plaintiff seeks compensatory and punitive damages, court costs and attorneys' fees. In addition, the plaintiff seeks an Order from the Court directing the BOP provide corrective surgery to "cure his pains and deformity." Complaint at 9.

**B.  The Defendants' Motion**

In their motion, the defendants assert that the plaintiff's FTCA claims should be dismissed on the following grounds:

(1) the only proper defendant under the FTCA is the United States;

(2) the plaintiff has failed to state an assault and battery claim; and

(3) the plaintiff failed to comply with the requirements of the West Virginia Medical Professional Liability Act ("MPLA"), W.Va. Code § 55-7B-1, with regard to his medical negligence claim.[3]

The defendants further assert that the plaintiff's <u>Bivens</u> claims should be dismissed because the plaintiff has failed to exhaust his administrative remedies, that the complaint otherwise fails to state a claim upon which relief can be granted, and that even assuming that a claim has been stated, the defendant is entitled to qualified immunity. Thus, the defendants request that this action be dismissed with prejudice or, in the alternative, that summary judgment be entered in their favor.

### C. The Plaintiff's Reply

In his motion in opposition to the defendants' response, the plaintiff asserts that he did fully exhaust his administrative remedies. In addition, the plaintiff asserts that he has raised cognizable claims for which relief should be granted. The plaintiff also makes additional arguments in support of his claims and asserts that the defendants are not entitled to qualified immunity. Therefore, the plaintiff requests that the defendants' motion be denied.

### III. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. <u>Advanced Health-Care Services, Inc., v. Radford Community Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly

---

[3] The defendants also correctly note that punitive damages and the right to a jury trial are not available under the FTCA. <u>See</u> Memorandum (dckt. 32-2) at 11 (citing 28 U.S.C. § 2674 (United States not liable for punitive damages); 28 U.S.C. § 2402 (actions against the United States under § 1346 shall be tried by the court without a jury)).

5

granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.   Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The

nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

### A. Plaintiffs' FTCA Claims

Pursuant to 28 U.S.C. § 2679, a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from the actions of federal employees taken within the scope of their office or employment.[4] The FTCA waives the federal governments' traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Because all of the alleged acts occurred in West Virginia, the substantive law of West Virginia governs this case.

   1. Assault and Battery

Although claims of assault and battery against the United States are generally barred, the FTCA allows such claims against law enforcement officers. See 28 U.S.C. § 2680(h). In West

---

[4] Accordingly, to the extent that the plaintiff attempts to sue the individual federal defendants under the FTCA, those claims must be dismissed. The only proper defendant under the FTCA is the United States.

Virginia, an assault is established by showing that the defendant

> (1) acted intending to cause a harmful or offensive contact with the plaintiffs; or an imminent apprehension of such a contact, and (2) the plaintiff is thereby put in such imminent apprehension.

West Virginia Fire and Cas. Co. v. Stanley, 602 S.E.2d 483, 495 (W.Va. 2004) (citing Restatement (Second) of Torts § 21 (1965)).

In addition, a person is subject to liability for battery in West Virginia if:

> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

Tolliver v. The Kroger Co., 498 S.E.2d 702, 711 (W.Va. 1997) (quoting Restatement (Second) of Torts § 13 (1965)).

In this instance, the defendants concede that on the date in question, defendant Vance was working in the SHU and escorted the plaintiff from the outside recreation area to his cell. Motion (dckt. 32), Ex. 2 at ¶ 2. However, the defendants assert that while the plaintiff was being escorted to his cell, defendant Vance was told that the plaintiff's cell assignment had changed. Id. at ¶ 4. The defendants further assert that when defendant Vance attempted to turn the plaintiff toward his new cell, the plaintiff became loud and argumentative. Id. at ¶ 5-6. Moreover, the plaintiff allegedly ignored several of defendant Vance's verbal commands to move toward the cell, and eventually started to resist defendant Vance. Id. at ¶ 7.

At this time, defendant Vance instructed the plaintiff to stop resisting and comply. Id. at ¶ 9. The plaintiff failed to comply. Id. As a result, the defendants assert that defendant Vance was forced to use a compliance technique to gain control of the plaintiff. Id. at ¶ 11. This technique involved defendant Vance placing his right arm inside the plaintiff's right arm, while holding the handcuffs in his left hand and elevating the plaintiff's hands. Id. at ¶ 13-14. The defendants assert

9

that defendant Vance used this technique only long enough to walk the plaintiff 15 feet to his new cell. Id. at ¶ 15. A subsequent investigation of the incident by the BOP concluded that defendant Vance's use of force in this situation was necessary and appropriate. Id. at ¶19-20. Defendant Vance asserts that he did not intend to cause harmful or offensive contact with the plaintiff. Id. at ¶ 21. Rather, he was merely doing his job and applied reasonable force, given the circumstances. Id. at ¶ 22-23.

The defendants concede that defendant Vance did in fact raise the plaintiff's handcuffed arms on the day in question. There is absolutely no evidence, however, other than the plaintiff's own self-serving and conclusory allegations, to show that defendant Vance had the necessary intent to commit an assault and battery on the plaintiff. Instead, the undisputed evidence shows that defendant Vance merely applied a compliance technique for a short period of time. The undisputed evidence also shows that the use of that technique was reasonable under the circumstances. Accordingly, the defendants are entitled to judgment as a matter of law on this claim.

2. Medical Negligence

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated, and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[5]

With regard to the appropriate standard of care, the plaintiff has completely failed to sustain

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

his burden of proof. The plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of a fractured wrist, bruised hand or sore back.[6] Under the circumstances of this case, the plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant's breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, summary judgment is appropriate as to this ground.

**B.  Plaintiffs' Bivens Claims**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[7] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo,

---

[6] Plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of any of the injuries he allegedly suffered, including a fractured wrist, bruised hand and sore back.

[7] Id.

12

548 U.S. 81, 126 S.Ct. 2378 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Gilmer, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

Here, the plaintiff has an extensive record of administrative filings. The BOP's records show that the plaintiff has filed approximately 125 remedies during his incarceration. Motion to Dismiss (dckt. 32), Ex. 1 at ¶ 15 and Att. D. However, none of those remedies contain the specific claims of religious discrimination, excessive force, failure to protect, the manner in which restraints were applied, or retaliatory transfer,[8] as are raised in the instant complaint. Id. at ¶ 16. The only claim

---

[8] A prisoner may state a claim of retaliatory transfer if the decision to transfer him was based on the inmate's exercise of a constitutionally protected right. See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994) (to state a retaliation claim, a plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right). In this case, the plaintiff asserts that he was transferred in retaliation for filing administrative grievances. However, an inmate does not have a constitutional right to participate in grievance procedures. See Adams v. Rice, supra. Therefore, even if this claim were exhausted, the plaintiff can state no retaliation claim based on his filing of administrative grievances.

13

raised in this case that has also been raised in the administrative remedy process is the plaintiff's claims that the defendants were deliberately indifferent to his serious medical needs by improperly and inadequately failing to treat his wrist following his transfer to USP-Big Sandy.[9] Id. at ¶ 17. However, in that remedy, the plaintiff only sought corrective surgery for his broken hand. Id; see also Att. D at 6-7. Therefore, even assuming that the plaintiff's request for corrective surgery is fully exhausted, the specific relief sought could have only been granted while the plaintiff was at USP-Big Sandy, outside the jurisdiction of this Court.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 32) be **GRANTED** and that the complaint be **DISMISSED with prejudice.** In light of this finding, the undersigned further

---

[9] To the extent that the plaintiff also asserted that staff at FCI-Gilmer failed to adequately treat his wrist fracture, and such a claim was exhausted, that claim is clearly refuted by the record. The undisputed evidence shows that the plaintiff had a history of fractures to his left wrist since childhood. See Motion (dckt 32), Ex. 1 at Att. H. On January 28, 2005, a few days prior to the incident with defendant Vance, the plaintiff reported problems with his left wrist to medical staff. Id. Moreover, when the plaintiff reported again to medical on February 1, 2005, after the incident with defendant Vance, the plaintiff was examined and x-rayed. Id. When it was discovered that the plaintiff's left wrist was fractured, a temporary short cast was applied. Id. That cast was later removed during a follow-up examination on February 17, 2005. Id. Shortly thereafter, the plaintiff was seen and evaluated by an Orthopaedic specialist. Id. The specialist determined that the plaintiff's wrist fracture was an exacerbated old injury and recommended a medical injection for pain. Id. Repeat x-rays were on July 22, 2005, which revealed irregularities at the base of the 2nd and 3rd metacarpals, with callus formation indicative of an old fracture. Id. Based on this information, medical staff determined that surgical repair of the wrist is not indicated. Id. Thus, it is clear that the plaintiff was adequately and appropriately treated after his wrist was fractured. The thrust of plaintiff's complaint is actually that he disagrees with staff's assessment of his need for further treatment, including surgery. However, a disagreement over the course of treatment between an inmate and medical staff does not rise to the level of a constitutional violation. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist.). Therefore, even were this ground properly before the Court at this time, the plaintiff fails to state a claim for which relief could be granted.

recommends that the plaintiff's Motion and Declaration in Opposition to the Defendants' Motion for Summary Judgment (dckt. 42) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of tsdhis Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: May 21, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE